WARREN (MARSH v.). See Case No. 9,-121.

WARREN (MAURAN v.). See Case No. 9,-310.

---

## Case No. 17,198.

WARREN et al. v. PEASLEE.

[2 Curt. 231.] [1]

Circuit Court, D. Massachusetts. May Term, 1855.

CUSTOMS DUTIES — DUTIABLE CHARGES — COMMISSIONS—PROTEST.

1. Expenses of land transportation to get merchandise on shipboard are dutiable charges.

2. Whether the commission, which is to be added as a dutiable charge, is to be cast on the foot of the invoice, with or without the addition of the charges, depends on usage, and is not fixed by law.

3. A notice, at the close of a protest. that it is to apply to all future similar importations, does not dispense with the necessity of a protest, in reference to those importations.

[Cited in Baxter v. Maxwell, Case No. 1,126; Hutton v. Schell, Id. 6,961; Ullman v. Murphy, Id. 14,325; Curtis v. Fielder, 2 Black (67 U. S.) 481; Davies v. Arthur, Case No. 3,611; Chung Yune v. Kelly, 14 Fed. 641; Davies v. Miller, 130 U. S. 285, 9 Sup. Ct. 561; Schell v. Fauché, 138 U. S. 566, 11 Sup. Ct. 380; Herrman v. Robertson, 152 Sup. Ct. 521, 14 Sup. Ct. 687; Saltonstall v. Birtwell, 60 Fed. 974.]

[This was an action by George W. Warren and others against Charles H. Peaslee, collector of the port of Boston, to recover back duties paid under protest.]

CURTIS, Circuit Justice. This case is decided by the opinion of the court in Gant v. Peaslee [Case No. 5,212], so far as respects freight being a dutiable charge. Two other questions have been made. The first is, whether charges of inland transportation between Paris, where the merchandise was purchased, and Havre, where it was put on shipboard, are dutiable charges. I am of opinion that they are. Under the comprehensive words, "all costs and charges," I consider all charges incurred to get the property on shipboard, are included. If the merchandise be purchased in the port at which it is shipped, the cost of drayage would usually be the only actual charge for transporting it by land. If it be purchased in another place, and brought thence to the port of shipment, there is an increased actual charge for land or internal transportation; and this is as fairly included as drayage. It can make no difference whether the internal transportation, necessary to get the property from the place of purchase. on board ship, is greater or less, in length or cost.

The other question is, whether the rate of commissions which the law requires to be included, is to be cast on the invoice value alone, or upon that and the charges. It is argued that commissions constitute one of the charges, and are so deemed by the law, which says, adding all costs and charges, "including, in all cases, a commission, at the usual rate." It must be admitted, that a commission is a charge; and it would seem, from the language of the act. that it is one of those charges. which are to be added to the invoice cost. But this does not decide, on what the commission is to be cast. It does not seem to me that the act has prescribed, or intended to prescribe any one fixed rule on that subject. The act does not define what it means by a commission. It uses a well-known mercantile term, and undoubtedly employs it in the sense in which merchants, generally, employ it. It is a percentage cast on some amount, ascertained in the course of a particular transaction; and usage determines. not only the rate of this percentage, but also on what it is to be computed. What authority is there. for saying it is to be computed upon the foot of the invoice, where a purchase is made by an agent, and not upon any other sum? Manifestly none other than usage. for the law is silent. In my opinion. therefore. the question. what is the commission referred to by the act, can only be answered by ascertaining, on what it had usually been cast, in such cases, when the act in question was passed. If on the foot of the invoice alone, then it should be so cast to ascertain its amount as a dutiable charge; if on that and moneys paid for charges. then the sum of both the cost and charges is the proper basis of a commission. If the usage was both ways. then I do not perceive why the secretary of the treasury, might not properly adopt either usage as affording a rule. As no evidence has been offered by the plaintiffs to show that the collector acted contrary to the usage existing among merchants, in such cases. when the act of 1851 (9 Stat. 629) was passed, for this item of claim, they cannot recover.

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

After this opinion was pronounced, the parties agreed on the following statement of facts, for the purpose of determining the amount the plaintiffs were entitled to recover:—

"It is agreed that the whole amount of duty exacted by defendant and paid by the plaintiffs on freight from Havre to Liverpool, up to the date of the plaintiffs' writ, is $119. It is also agreed that to the first twelve or fifteen entries made by the plaintiffs, there was attached at time of payment a protest in the form of the copy hereto annexed marked 'A,' and that the duty assessed on the freight charged on these entries having such a protest attached amounted to $109, and that the subsequent entries, on which the balance of the $119 was assessed and paid, had no such protest attached to them. It is submitted to the court, whether in point of law the plaintiffs can recover back such excess of duty paid on such subsequent entries after the protest made on the preceding entries, it being admitted that no such protest was attached to such subsequent entries. It is also admitted that the amount of duties so levied and paid on each of said subsequent entries, is small, not exceeding, in some instances, to from one to three dollars.

"Almon W. Griswold. Attorney to Plaintiffs.

"B. F. Hallett, Defendant's Attorney.

"A true copy. Attest, H. W. Fuller, Clerk U. S. C. C."

"A.

"Protest.

"Boston, ——, 185-.

"To the Collector:—Sir,—We protest against the payment of duty charged on the additions made to the annexed entry for freight or charges from Havre to Liverpool, on packages marked as per annexed entry, believing that under existing laws said merchandise is liable only to a duty ad valorem upon the fair market value at the time of shipment from Havre—said port being the 'port of exportation to the United States;' that said goods were shipped from Havre to Boston. via Liverpool. because of the greater facilities for rapid transportation by that route; that we contracted for the freight of said goods from Havre to Boston at a fixed rate. payable on delivery at Boston. and no additional compensation was allowed. nor abatement in price made, by reason of any departure from the direct route from Havre to Boston. We also protest against the payment of duty, on the additions made to the annexed entry for inland freight or charges. because said goods are invoiced free on board, and the price named in the invoice includes all charges and expenses to the port of exportation, and we pay no separate expense or charges on said goods. We also protest against being compelled to pay duty on 2½ per centum commission on the 'charges' or expenses on the merchandise embraced in the annexed entry, believing said commission is chargeable only on the cost or market value of said merchandise without the 'charges;' and we pay the amount exacted on this entry, in order to get possession of the goods. (You are hereby notified that we desire and intend this protest to apply to all future similar importations made by us.)

"(A. W. G.)    Signed, Geo. W. Warren & Co."

The question was argued by—
Mr. Griswold, for plaintiffs.
Mr. Hallett, Dist. Atty., contra.

CURTIS, Circuit Justice.    I understand that the act of February 26, 1845 (5 Stat. 727), which requires a protest, had two main objects in view; one being to apprise the collector of the objecti..ss entertained by the importer, before it should be too late to remove them, if capable of being removed; the other, to hold the importer to those objections which he then contemplated, and on which he really acted, and prevent him, or others in his behalf, from seeking out defects in the proceedings, after the business should be closed, by the payment of the money into the treasury.

It is apparent, that each of these objects will be attained very imperfectly, if at all. by allowing one general protest to be made and to apply through all coming time, to all similar importations made by the importer.    I think such a mode of protesting is far too vague to meet the requirement of this act. It would not be in conformity with any known course of proceeding in similar cases. The grounds of objection to the particular payment sought to be recovered back, must be not only distinctly, but specifically set forth. And it must be applied to that particular payment. Here is a protest which the importer says is to apply to all future similar importations. What is to constitute their similarity, so as to bring them within it? The collector, even if he were bound to keep in view, through an indefinite period of time, the fact that such a protest had been made, would have no certain means of knowing, whether any particular importation was or was not intended by the importer to come within the protest; and the importer himself might change his own views on the subject at pleasure; and though, when he made the payment, he did not consider the importation similar, and so had no intention to protest. he might afterwards insist it was similar. and so within the protest.

The plaintiffs rely on the decision of the supreme court. in the case of Marriott v. Bruce, 9 How. [50 U. S.] 619. The circumstances of that case were very peculiar. and they are relied on by the court as the reasons for the decision. at which they manifestly felt great difficulty and hesitation in arriving. When such a case as that presents itself. I shall, of course, follow it. This is not such a case; and I have no doubt the general notice at the end of the protest is ineffectual.